UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 24, 2022

LETTER TO ALL COUNSEL OF RECORD

Re:   *Michael C. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-0029-BAH

Dear Counsel:

On January 6, 2022, Plaintiff Michael C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 8, and the parties' cross-motions for summary judgment, ECFs 11 and 13. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on February 26, 2020, alleging a disability onset of February 11, 2020. Tr. 58, 76. Plaintiff's claims were denied initially and on reconsideration. Tr. 73, 91, 102, 108. On May 26, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 32–56. Following the hearing, on June 16, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 15–30. The Appeals Council denied Plaintiff's request for review, Tr. 1–5, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.  **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§

---

[1] 42 U.S.C. §§ 301 et seq.

404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff has not been engaged in in substantial gainful activity since the alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease, diabetes mellitus, and hypertension (20 CFR 404.1520(c) and 416.920(c))." Tr. 21. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can frequently handle and finger bilaterally; must avoid concentrated exposure to extreme heat and cold and hazardous machinery; and must avoid all exposure to unprotected heights and open flames.

Tr. 21–22. The ALJ determined that Plaintiff was able to perform past relevant work as:

> a sales agent-insurance, DOT#[2] 250.257-010, which is listed as light, skilled work with an SVP of 6; identification clerk, DOT# 205.362-022, which is listed as sedentary, skilled work with an SVP of 3; customer service representative, DOT# 249.362-026, which is listed as sedentary, semi-skilled work with an SVP of 4; and supervisors-customer complaints; DOT# 241.137-014, which is listed as sedentary, skilled work with an SVP of 6. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

Tr. 24–25.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 26.

### III.  LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff raises one over-arching argument on appeal, specifically that the ALJ erroneously assessed Plaintiff's RFC.  ECF 11-1, at 4.  Plaintiff's argument has multiple subparts.  First, Plaintiff alleges that the ALJ failed to properly assess the "consistency and supportability" of Dr. Kyle Chapman's, a consultative examiner's, medical opinions.  *Id.* at 8–9.  Second, Plaintiff alleges that the ALJ "mischaracterized Dr. Chapman's examination findings" by inaccurately quoting Dr. Chapman's conclusions.  *Id.* at 9.  Third, Plaintiff avers that the ALJ "failed to specifically explain the basis rejecting Dr. Chapman's manipulative limitations, and improperly relied upon [the ALJ's] own medical judgment."  *Id.* at 10.  Plaintiff also contends that the ALJ "failed to provide adequate explanation to support his determination that the Plaintiff was capable of frequent handling and fingering of objects bilaterally."  *Id.* at 11.  Finally, Plaintiff contends that the ALJ "erroneously relied upon the Plaintiff's lack of treatment and lack of medication" in determining Plaintiff's RFC.  *Id.* at 11–12.

Defendant counters that the ALJ adequately discussed the consistency and supportability of Dr. Chapman's findings.  ECF 13-1, 6–7.  Defendant also claims that the ALJ was not required to explain the basis for rejecting Dr. Chapman's manipulative limitations, provided support for explanations of findings related to Plaintiff's ability to handle and finger objects bilaterally, properly summarized Dr. Chapman's findings, and did not improperly substitute the ALJ's own judgment for that of a medical professional.  *Id.* at 8–9.  Finally, Defendant avers that reference to Plaintiff's lack of treatment was harmless because "when [Plaintiff] *did* receive treatment, [Plaintiff] denied or did not mention back pain."  *Id.* at 9 (emphasis in original).  Defendant does not address Plaintiff's argument related to medication.

*Michael C. v. Kijakazi*
Civil No. 22-0029-BAH
October 24, 2022
Page 4

"For claims filed after March 27, 2017, an ALJ must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). An ALJ is required to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)). "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.* (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). Therefore, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the ALJ's] . . . decision." *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Regarding consistency, the ALJ looks to the degree of consistency between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *see also* 20 C.F.R. § 416.920c(c)(2).

The ALJ here provided the required explanation of the "supportability" of Dr. Chapman's opinion as it relates to other evidence in the record. The ALJ described Dr. Chapman's observations and the results of his examination. The ALJ explicitly noted that Dr. Chapman "supported his opinion by noting that the observed pain was disproportionate to the activities being completed" by the Plaintiff during the examination. Tr. 24. The ALJ also cited to the results of the various tests performed during Dr. Chapman's examination. Tr. 24. As to consistency, the ALJ cited to Plaintiff's "history" of "degenerative disc diseases" and noted the "lack of consistency" in being treated for back pain. Tr. 24. The ALJ cited to the records relevant to Dr. Chapman's assessment to evaluate the consistency between these records and Dr. Chapman's conclusions. Tr. 24. These records are not so voluminous as to render these citations meaningless. To the contrary, the records are short enough that I am able to review the ALJ's decision and the records themselves and find that the record contains "sufficien[t] evidence" to support the ALJ's determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Further, the ALJ discussed the findings of the State agency medical consultants, which necessarily required a comparison with Dr. Chapman's observations and the record as a whole. *See Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) ("The discussion in step-two that these limitations had a minimal impact on vocation and were being managed tells us what impact these limitations had in the residual-functional-capacity analysis. We can conduct a meaningful review without making an administrative law judge repeat himself."). Dr. Chapman's report itself even alludes to inconsistencies between Plaintiff's exam performance and other observable behaviors during the visit. Tr. 357 ("[Plaintiff] was able to open the door using grasping technique of his left and twisted without difficulty; unclear to me why he was unable to do these task[s] on command. There may be a component of limited volitional effort or level of apraxia; this may be multifactorial."). "Having opined on the supportability and consistency of [Dr. Chapman's] opinion, the ALJ followed the proper legal standards in reaching his conclusion that the opinion was not persuasive." *Lawson v. Kijakazi*, No. AAQ-21-00383, 2022 WL 1744545, at *2 (D. Md. May 31, 2022). "Even if I were to disagree with the conclusion of that evaluation, I cannot re-weigh conflicting evidence or substitute my judgment for that of the Commissioner, so long as the Commissioner's decision

is supported by substantial evidence." *Id.* (citing *Craig*, 76 F.3d at 589).

As to Plaintiff's second argument that the ALJ misstated Dr. Chapman's finding, I do not find the ALJ's summary of Dr. Chapman's report to be misleading or incorrect. Plaintiff correctly recites Dr. Chapman's findings as to Plaintiff's "sensation" during the September 26, 2020, examination. ECF 11-1, at 9 (citing Tr. 356). Specifically, Dr. Chapman observed that Plaintiff's "sensation [was] intact in upper and lower extremities except for abnormal sensation to light touch proprioception and vibration to hands and feet bilaterally." Tr. 56. However, the ALJ summarized Dr. Chapman's findings as to "sensation" as reflecting a finding of "abnormal light sensation to hands and feet." Tr. 22–24. As Defendant correctly notes, these two statements are not inconsistent as the former reflects "abnormal sensation to light touch" just as the latter statement does. ECF 13-1, at 9. The ALJ's decision makes clear that the ALJ considered the entirety of Dr. Chapman's report as well as the findings of other medical consultants. Thus, I am not left "to substantively change the wording of the decision or speculate that the ALJ meant something other than what is written," and thus I do not find that remand is warranted to further address the issue. *Williams v. Colvin*, No. 3:14CV219, 2015 WL 1877460, at *2 (W.D.N.C. Apr. 23, 2015) (citing *Meyer v. Astrue*, 662 F.3d 700, 706–07 (4th Cir. 2011)). Further, even if the ALJ's shortening of Dr. Chapman's finding was considered to be a typographical error, I believe the ALJ's intent is clear from the rest of the opinion and therefore do not find that remand is warranted on this point. *See Douglas v. Astrue*, No. 1:09-1349-CMC-SVH, 2010 WL 3522298, at *3 (D.S.C. Sept. 3, 2010) (collecting cases discussing typographical errors and noting that remand is required only when there is "lack of clarity as to the ALJ's intent").

I also find that the ALJ did not improperly substitute the ALJ's opinion for that of a medical professional or fail to support the finding that Plaintiff was capable of frequently handling and fingering objects bilaterally. As noted, an ALJ is supposed to consider whether a medical opinion is consistent "with the evidence from other medical sources" and supported by explanation. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). However, an ALJ is not permitted to "substitute[] his lay opinions for the judgments of medical professionals who had treated and examined [a claimant] over many years." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 271 (4th Cir. 2017). Here, the ALJ did the former by weighing the opinions of state agency consultants, treatment records, and the findings of Dr. Chapman. The ALJ did not reject any of these medical opinions due to the ALJ's "own observations and medical judgments." *Id.* Instead, the ALJ compared the opinions to treatment records, not to the ALJ's own observations and conclusions.[3] Tr. 23–24. To the extent the ALJ "rejected Dr. Chapman's manipulative limitations," this rejection was based on a comparison between the findings of state medical consultants, one of whom opined that Plaintiff "maintain[s] the ability to handling, feeling, and fingering at least frequently," Tr. 69, and another who noted that Plaintiff was able "to grasp and

---

[3] In *Brown*, the ALJ "improperly relied on his own observations and medical judgments in finding that—because [the claimant] was able to sit through the second ALJ hearing, take a certain psychological test (the MMPI-II), and manage his own money—his pain was not as limiting as he claimed." 873 F.3d at 271. The ALJ's discussion of Dr. Chapman's opinion made no reference to Plaintiff's behavior during the hearing or to Plaintiff's activities of daily living.

function" to complete multiple tasks, Tr. 106. Dr. Chapman even noted in his report some apparent inconsistencies between Plaintiff's manipulative abilities on exam and those observed by Dr. Chapman during other portions of Plaintiff's visit, such as Plaintiff's ability to grab his phone and glasses case and open and twist a door handle. Tr. 356. Thus, the rejection was based on a comparison between Dr. Chapman's opinion and other evidence and observations, not solely on the ALJ's own accord. *See* Tr. 24 (citing Ex. 1A and 2A (opinions of Dr. Goo), 7A and 8A (opinion of Dr. Boas)). This is what the ALJ was required to do, and the ALJ's conclusion on this point is supported by substantial evidence.

Finally, I do not find that remand is warrant on the ground that the ALJ improperly referenced the lack of "treatment and lack of medication" in assessing Plaintiff's RFC. ECF 11-1, at 11–12. "A claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)). However, "[a]n absence of evidence that a claimant sought low-cost or free care may warrant discrediting his excuse that he could not afford treatment." *Buchholtz v. Barnhart*, 98 F. App'x 540, 546 (7th Cir. 2004) (citing *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003)); *see also Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding that ALJ appropriately discounted claimant's argument he could not afford medical care absent evidence he sought and was denied low-cost or free care); Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) (requiring an ALJ to consider whether "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services").

Here, the ALJ noted that Plaintiff "lacks consistent treatment for his back pain" and "does not take any medication." Tr. 24. However, there is no finding that Plaintiff failed to comply with a specific treatment regimen, failed to take a specific prescribed medication, or, as was the case in *Lovejoy*, failed to seek non-prescribed care. *Lovejoy*, 790 F.2d at 1117 (noting that it is erroneous to "consider the claimant's failure to seek treatment as a factor" in the determination of an impairment's severity and to consider the claimant's "fail[ure] to follow prescribed treatment" in the ultimate disability determination "when that failure is justified by lack of funds"). There is clear reference in the record to Plaintiff not taking medication because he did not have health insurance, an obvious nod to his lack of funds. Tr. 45, 324, 330, 354. Similarly, Plaintiff offered vague testimony that he was not seeing "any kind of doctors . . . on a regular basis" in part because "of the lack of insurance." Tr. 45. Plaintiff also testified that Plaintiff did not have health insurance because "it's too expensive" and that Plaintiff did not "think [Plaintiff] qualif[ied] for Medicaid." *Id.* There is no evidence that Plaintiff sought low-cost or free care.

Some courts have found no error where, as here, "non-compliance was merely one of a number of factors the ALJ considered in determining that [the claimant's] testimony about her symptoms was only partially credible." *Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015); *Rebecca J. v. Kijakazi*, No. 3:20-CV-00795 (DJN), 2022 WL 815467, at *10 (E.D. Va. Feb. 10, 2022), *report and recommendation adopted*, 2022 WL 811292 (E.D. Va. Mar. 16, 2022) ("It is

clear from this analysis that Plaintiff's choice in not following through with surgery was not the sole reason why the ALJ discounted her credibility."); *Ketterman v. Colvin*, No. 2:15CV18, 2016 WL 386391, at *13 (N.D. W. Va. Jan. 12, 2016), *report and recommendation adopted*, 2016 WL 398192 (N.D. W. Va. Feb. 1, 2016) ("However, Plaintiff's choice in not following through with surgery was not the *sole* reason why the ALJ discounted his credibility. The ALJ factored in other evidence gathered from Plaintiff's testimony coupled with the medical record when determining Plaintiff's credibility." (emphasis in original)).

Other courts have held that an ALJ is required to develop the record as to whether a claimant's lack of resources contributed to the failure to seek or maintain care when the ALJ bases any part of a denial of disability benefits on a failure to seek or maintain care. *Lovejoy*, 790 F. 2d at 1117; *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 274 (D. Md. 2003) ("[To deny benefits] based on noncompliance, *in full or in part*, the Commissioner must conduct a particularized inquiry and develop a record establishing by substantial evidence that the claimant's impairment is reasonably remediable . . . and that the claimant lacks good cause for failing to follow a prescribed treatment program." (emphasis added)); *see also Keller v. Berryhill*, 754 F. App'x 193, 200 (4th Cir. 2018) (Wynn, J., concurring) (noting that if noncompliance with prescribed treatment is a basis for an adverse credibility finding, an "ALJ should address on the record, first, whether [a claimant's] inability to pay for [treatment] excuses her noncompliance under *Lovejoy*").

I need not address which line of authority better suits this case because Plaintiff has not demonstrated that the result would be different had the ALJ inquired further into Plaintiff's ability to afford treatment and medication. The ALJ explicitly included limitations in the RFC to account for the impairments for which Plaintiff was not seeking treatment or taking medication, including the back pain from his degenerative disc disease and his diabetes. Tr. 22–23. Plaintiff does not contend that the RFC fails to accommodate these impairments and does not explain how the RFC would have changed had the ALJ considered Plaintiff's ability to pay, so any error on this point was harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD 15-1694, 2016 WL 5147195, at *10 (D. Md. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis).

Plaintiff does not identify any specific medication or treatment that was beyond Plaintiff's financial reach. Instead, Plaintiff argues that the ALJ improperly relied on "Plaintiff's lack of treatment and lack of medication" to support the ALJ's "determination that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record," to support the ALJ's evaluation of the consultative examiner's opinions, and to support the ALJ's RFC assessment. ECF 11-1, at 11–12. The record, however, does not support the claim that the ALJ's reference to lack of medical care was as detrimental as Plaintiff alleges.

First, the reference to lack of treatment is limited solely to "back pain." Tr. 23, 24. It comes as the ALJ discusses Plaintiff's degenerative disc disease, an impairment the ALJ

determined was severe nevertheless, and later when assessing the persuasiveness of several medical opinions. Tr. 22–24. While it is true that the ALJ referenced a lack of "consistent treatment for back pain," the ALJ nonetheless added limitations to the RFC to accommodate Plaintiff's back pain.[4] Plaintiff does not challenge this limitation as inadequate or argue that the RFC should have been changed. Thus, any error in referencing the lack of consistent care for Plaintiff's back is harmless. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017).[5] Further, Plaintiff ignores that the ALJ's reference to inconsistent treatment for back pain, as Defendant notes, rests on Plaintiff's failure to mention back pain during a visit to a doctor that occurred just a few weeks before the date of alleged onset. ECF 13-1, at 10 (citing Tr. 344, a summary of a January 31, 2020, consultation wherein Plaintiff exhibited "no back pain, no neck pain, no joint pain, no muscle pain, no swelling, and no changes in range of motion").

As to the observation that Plaintiff "does not take any medication," Tr. 22–25, it is true that Dr. Chapman noted that Plaintiff is "not on medication because he does not have insurance," Tr. 355, and Plaintiff's counsel stated the same at Plaintiff's hearing. Tr. 37. However, the record also reflects that Plaintiff did take medication but chose to stop for non-economic reasons. Tr. 330 (recounting that "even when [Plaintiff] was taking meds it was causing adverse effects"). As the ALJ noted, the record indicates Plaintiff began purposefully addressing his health issues using "a holistic approach" due to these adverse effects, not due to financial difficulties. Tr. 29, 330. Records also reflect that Plaintiff previously took medication for vertigo. Tr. 354. As such, the record has ample evidence to non-economic reasons for Plaintiff's failure to take medication. It also bears noting that the ALJ did not explicitly discount Plaintiff's credibility due to Plaintiff's failure to take medication. *See Thomas v. Colvin*, No. 6:15-3251-MBS-KFM, 2016 WL 5109199, at *9 (D.S.C. Aug. 24, 2016), *report and recommendation adopted*, 2016 WL 5073818 (D.S.C. Sept. 20, 2016) (finding error when an ALJ discredited "a history of a mood disorder, OCD, and anxiety disorder," because "the record does not show any inpatient psychiatric hospitalizations or specialized treatment from a psychiatrist").

In sum, Plaintiff fails to address how Plaintiff's RFC would be meaningfully amended had the ALJ handled Plaintiff's statements related to medication differently. In fact, it is not clear that

---

[4] The sentence following the short references to lack of treatment or medication concludes that "claimant's degenerative disc disease is a severe impairment" that calls for an RFC limitation to "light work." Tr. 22. Similarly, the reference to lack of care is repeated in a discussion of diabetes and hypertension, but the ALJ again concluded that those impairments were "severe" and that Plaintiff's diabetes required an RFC limitation to light work. Tr. 23. Plaintiff does not challenge this limitation as insufficient.

[5] I also note that the ALJ did not explicitly base a credibility finding on Plaintiff's lack of consistent care. *See Rebecca J.*, 2022 WL 815467, at *10 ("As Defendant correctly notes, 'the ALJ never stated that Plaintiff was less credible because she declined to get surgery.'"). Here, the ALJ noted that the "claimant's statements concerning intensity, persistence and limiting effect of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23.

the reference to a lack of medication was relied on by the ALJ to any degree of meaningful significance. *See Gadsden v. Colvin*, No. 4:12-CV-02530-DCN, 2014 WL 368216, at *4 (D.S.C. Feb. 3, 2014) ("Because the ALJ's analysis of Gadsden's credibility both *relies heavily on her limited medical treatment history* and fails to address whether she could afford to pay for other medical treatment, remand is warranted." (emphasis added)). As such, I do not find that the ALJ's reference to Plaintiff's statement that Plaintiff "does not take any medication" was error. Further, I find that any error in failing to develop the record as to Plaintiff's ability to pay for treatment is harmless on the facts here because the RFC includes limitations to account for these impairments, and Plaintiff has not shown how properly developing the record on this point would have altered the RFC or the ultimate disability determination.

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 11, is DENIED and Defendant's motion for summary judgment, ECF 13, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge